UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-00309-BR

| | |
|---|---|
| JULIUS H. GLENN, SR.,  )<br>ADMINISTRATOR OF THE ESTATE OF  )<br>LATIECE RENEE REID GLENN,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>PERFORMANCE ANESTHESIA, P.A.,  )<br>and, UNITED STATES OF AMERICA,  )<br>  )<br>  Defendants.  )  | ORDER |

This matter is before the court on three motions. On 21 September 2009, defendant United States of America ("defendant" or "United States") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff filed a response in opposition on 12 November 2009. On 4 December 2009, plaintiff filed a motion for review of the defendant's scope of employment certifications. Defendant filed a response in opposition on 14 December 2009. On 2 March 2010, defendant filed a motion to stay discovery. Plaintiff filed a response in opposition on 12 March 2010, and defendant filed a reply on 16 March 2010. These matters are ripe for disposition.

I. BACKGROUND

Plaintiff, husband administrator of the estate of decedent Corporal Latiece Renee Reid Glenn ("decedent"), filed a wrongful death medical negligence suit against Performance Anesthesia, P.A., and four individual defendants ("individual defendants") in the General Court of Justice, Superior Court Division, Cumberland County, North Carolina on 11 June 2009. On 9 July 2009, the United States removed the action to this court. In so doing, the United States certified that defendant Major Corey E. Eichelberger was acting within the scope of his employment as an employee of the United

States Department of the Army at the time of the incidents in question, and the United States substituted itself as a party defendant in lieu of Eichelberger. On 24 July 2009, the United States certified that the remaining individual defendants Walter R. Hand, Jr., Raymond E. Brezinski, and Robert L. Conneen[1] were acting within the scope of their employment as employees of the United States operating under personal services contracts with the Army, and the United States was substituted for those defendants.[2]

At the time of the incidents alleged in the complaint, Hand, Jr., Brezinski, and Conneen were employed by Performance Anesthesia, P.A. as certified registered nurse anesthetists ("CRNAs"). (Compl. ¶¶ 8-9, 13-16.) Eichelberger was a nurse anesthetist student interning with Performance Anesthesia, P.A. at the time. (Id. ¶¶ 11-12.) On 21 June 2007, decedent was a pregnant, active duty soldier when her water broke, and she went to Womack Army Medical Center in Fort Bragg, North Carolina to receive treatment. (Pl.'s Mem. Opp'n Mot. Dismiss at 3; Compl. ¶ 21.) In preparation for a caesarian delivery, the individual defendants inserted an intrathecal catheter into the decedent. (Compl. ¶¶ 22-23.) During the placement of the catheter, the dura surrounding decedent's spinal cord was punctured, causing it to leak cerebrospinal fluid. (Id. ¶ 24.) As a result, decedent received spinal anesthesia instead of the intended epidural anesthesia. (Id. ¶ 25.) Decedent delivered her son, and she later contracted, and was diagnosed with, meningitis as a result of the puncture. (Id. ¶¶ 26-27.) She died on 27 June 2007. (Id. ¶ 27.)

---

1 Defendant Robert L. Conneen committed suicide two days after the death of decedent and is represented by his surviving spouse, Denise Conneen, executrix of his estate. (Compl. ¶¶ 7-10.)

2 The United States did not substitute itself for Performance Anesthesia, P.A. and has stated that "[t]he United States does not represent Performance Anesthesia, P.A. in this suit and has taken no action on Performance's behalf." (Def.'s Reply to Pl.'s Mem. Opp'n Mot. Dismiss at 2 n.1.)

Plaintiff filed administrative claims with the U.S. Army Claims Service, which denied the claims on 22 October 2008 based on the holding in Feres v. United States, 340 U.S. 145 (1950). (Pl.'s Mem. Opp'n Mot. Dismiss at 4.) As previously noted, plaintiff filed his action in state court on 11 June 2009, and on 9 July 2009, the action was removed to this court.

## II. DISCUSSION

### A. Standard of Review

A motion under Fed. R. Civ. P. 12(b)(1) challenging subject matter jurisdiction concerns a court's "very power" to hear a case. United States v. Beasley, 495 F.3d 142, 147 (4th Cir. 2007). In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must "'regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). A district court should only grant a Rule 12(b)(1) motion to dismiss "'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id.

### B. Employees of the Government vs. Independent Contractors

"'[T]he United States, as sovereign, is immune from suits save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)). Pursuant to the Federal Tort Claims Act ("FTCA"), "Congress has waived sovereign immunity and has granted consent for the government to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or

3

employment.'" Id. (quoting 28 U.S.C. 1346(b) (emphasis added)). However, "Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government." Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).

The main issue raised by plaintiff in opposition to defendant's motion to dismiss and in plaintiff's motion for review of the United States' scope of employment certifications is whether the individual defendants were employees of the government within the meaning of the FTCA at the time of the incidents alleged in the complaint. The determination of this issue is central to this court's 12(b)(1) ruling because if the individual defendants are found to be independent contractors rather than federal employees, then the substitution of the United States for the individual defendants pursuant to the FTCA was improper, and the court must dismiss this case for lack of subject matter jurisdiction.

If, however, the individual defendants were employees of the government, then the Federal Employees Liability and Reform Tort Compensation Act of 1988, which amended the FTCA and provided absolute immunity to government employees for torts committed in the scope of their employment,[3] would nullify the plaintiff's claim against the individual defendants and require instead that he proceed only against the United States. See Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995). If the United States has been properly substituted as the defendant, the question then

---

[3] Prior to 1988, a federal employee who committed a tort while acting within the scope of his employment did not enjoy absolute immunity from suit. See Westfall v. Erwin, 484 U.S. 292 (1988). The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, was enacted in response to the Court's decision in Westfall. As a result, sovereign immunity now attaches where the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . ." 28 U.S.C. § 2679(d)(1).

4

becomes whether the United States is immune from suit under the Feres doctrine. (See Section II.C., infra.)

Whether an individual is an employee of the government is a question of federal law, not state law. See, e.g., Logue v. United States, 412 U.S. 521, 528 (1973); Robb, 80 F.3d at 887; Ezekiel, 66 F.3d at 899. Under the FTCA, an "[e]mployee of the government" includes "officers or employees of any federal agency, members of the military . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671.

### (1) Certifications by the Attorney General

Here, the individual defendants were certified by the Attorney General's designee pursuant to 28 U.S.C. § 2679 to be employees of the government acting within the scope of their employment at the time of the alleged negligence. The United States argues that the Attorney General's certifications are *prima facie* evidence that the individual defendants were acting within the scope of their employment, thereby requiring the plaintiff to come forward with specific evidence to rebut the certification. (See Def.'s Reply Pl.'s Mem. Opp'n Mot. Dismiss at 5.) Because the plaintiff has failed to present any facts, evidence or law to rebut the certification, the United States contends that the plaintiff has failed to meet his burden of proof, and, therefore, the certifications are conclusive.

In contrast, the plaintiff argues that the Attorney General's certifications regarding the scope of employment do not answer the threshold question of whether the individual defendants were employees of the government. Here, the plaintiff's contention is that the individual defendants were never employees of the government, but rather that they worked at Womack Army Medical Center as independent contractors.

The certification provision used in this case provides: "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident . . . , any civil action . . . shall be deemed an action against the United States." 28 U.S.C. § 2679(d)(1). By its language, the provision assumes that the defendants are federal employees. Ezekiel, 66 F.3d at 899-900. The certifications, therefore, answer the question of whether the individual defendants were acting within the scope of their employment, not the threshold question of whether the defendants were federal employees. Id. at 900. Thus, the burden established by the Attorney General's certification that a particular employee acted within the scope of his employment has no bearing on plaintiff's contention that the individual defendants were at no time federal employees. Id. As a result, the court gives no evidentiary weight to the Attorney General's certifications in resolving this threshold issue of whether the defendants were employees of the government, and the court must conduct further analysis on this issue.[4]

### (2) The Gonzalez Act, 10 U.S.C. § 1089

Next, the United States argues that the individual defendants are employees of the government as a matter of law pursuant to the statutory provisions of the Medical Malpractice Immunity Act, 10 U.S.C. § 1089, which is commonly known as the Gonzalez Act. See Robb, 80 F.3d at 889 n.3 (health care personnel "may be deemed employees of the government for FTCA purposes because they were hired pursuant to an act of Congress which designates them as such").

---

[4] The plaintiff also suggests that the individual defendants did in fact act outside the scope of their employment and that the court must at least conduct an evidentiary hearing on the scope issue, citing Stokes v. Cross, 327 F.3d 1210, 1213-14 (D.C. Cir. 2003). However, as noted in Stokes, "[n]ot every complaint will warrant further inquiry into the scope-of-employment issue." Id. at 1216. Here, plaintiff has not alleged any facts in his complaint or in any subsequent filing that, if true, would demonstrate that the individual defendants acted outside the scope of their employment. Id. In fact, plaintiff states in his complaint that all four of the individual defendants were operating within the scope of their employment at the time of the alleged negligence (See Compl. ¶¶ 9, 12, 14, 16.) Thus, it is apparent that the dispositive issue for the purposes of plaintiff's motion for review of United States' scope of employment certifications is really whether the individual defendants were employees of the government or independent contractors, not whether the individual defendants acted outside the scope of their employment.

6

The Gonzalez Act is one of a series of immunity statutes enacted prior to the Federal Employees Liability Reform and Tort Compensation Act of 1988 that were designed to protect certain classes of Government employees from the threat of personal liability. United States v. Smith, 499 U.S. 160, 162-63 (1990). "The Gonzalez Act provides that in suits against military medical personnel for torts committed within the scope of their employment, the Government is to be substituted as the defendant and the suit is to proceed against the Government under the FTCA." Id.

The Gonzalez Act specifically provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces, . . . the Department of Defense, . . . or the Central Intelligence Agency . . . while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) whose act or omission gave rise to such action or proceeding. <u>This subsection shall also apply if the physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) involved is serving under a personal services contract entered into under section 1091 of this title.</u>

10 U.S.C. § 1089(a) (emphasis added).

Furthermore, under 10 U.S.C. § 1091(a)(1), the U.S. Secretary of Defense has the authority to "enter into personal services contracts to carry out health care responsibilities in such [medical treatment] facilities as determined to be necessary by the Secretary." Personal services contracts established under § 1091 are governed by the requirements set forth under 32 C.F.R. §§ 107.1-107.6.

7

"Personal services contract" is defined in 32 C.F.R. § 107.3 as "[a] contract that, by its express terms or as administered, makes the contractor personnel appear, in effect, to be government employees." Section 107.5 further provides:

> (a) Each contract under 10 U.S.C. 1091 with an individual or with an entity, such as a professional corporation or partnership, for the personal services of an individual must contain language specifically acknowledging the individual as a personal services contractor whose performance is subject to supervision and direction by designated officials of the Department of Defense.
>
> (b) The appearance of an employer-employee relationship created by the DoD supervision of a personal services contractor will normally support a limited recognition of the contractor as equal in status to a DoD employee in disposing of personal injury claims arising out of the contractor's performance. Personal injury claims alleging negligence by the contractor within the scope of his or her contract performance, therefore, will be processed as claims alleging negligence by DoD military or civil service personnel.

32 C.F.R. § 107.5(a), (b).

Thus, pursuant to the Gonzalez Act, health care providers who serve under a personal services contract authorized by the U.S. Secretary of Defense are deemed to be employees of the government for the purpose of disposing of personal injury claims.

Here, it is clear that the individual defendants were operating under a personal services contract.[5] The contract between the Government and Performance Anesthesia, P.A. specifically

---

[5] Individual defendants Hand, Jr., Conneen, and Brezinski were working as CRNAs at the time of the alleged negligence and thus were serving under the personal services contract. (See Compl. ¶¶ 9, 14, 16.) In contrast, defendant Eichelberger was a student nurse anesthetist student at the time. (Id. ¶¶ 11-12). The United States has asserted that defendant Eichelberger was an Army Major on active duty at the time of the alleged medical malpractice and thus was an employee of the government for the purposes of the FTCA. (See Mem. Supp. Def.'s Mot. Dismiss at 2.) Regardless of his military status, the court finds that defendant Eichelberger was serving under the personal services contract pursuant to a teaching clause that is contained in the contract. (See Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 1 at 1-29, clause 1.4.11.)

8

states that the contract is for personal services[6] and that the individual contractors are subject to the supervision of Government employees as required under 32 C.F.R. § 107.5(a). The contract provides:

> *This is a Personal Services contract.* Performance under personal services is subject to the day-to-day supervision and direction of designated employees of the Government. The government will evaluate the quality of professional and administrative services provided, and retain control over the medical and professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment). The Government designated official is the Chief, Anesthesia and Operative Services, or his designated representative. All CRNAs presented by the contractor must be approved by the WAMC Chief, Anesthesia Nursing, or his designated representative, prior to application for clinical privileges.

Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 1 at 1-24, clause 1.1.1.

Moreover, clause 1.1.2 of the contract specifically refers to the Gonzalez Act in stating that the health care providers serving under the contract do not need to provide their own malpractice insurance:

> Direct health care providers in performance of services are not responsible for obtaining medical malpractice insurance under this contract in accordance with the Gonzales[sic] Act (10 U.S.C. Section 109[sic], also known as the Medical Malpractice Immunity Act). The Government will not reimburse or otherwise pay for medical malpractice insurance should it be purchased by the contractor or contractor employees.

Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 1 at 1-24, clause 1.1.2.

---

[6] The contracts states: "The contract providers shall provide anesthesia care to eligible beneficiaries of the military health care system who present themselves to the Medical Treatment Facility [MTF] for treatment." (Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 1 at 1-24, clause 1.1.)

9

Thus, the plain language of the contract demonstrates that the individual defendants "were serving under a personal services contract" pursuant to Section 10 U.S.C. § 1089(a).[7]

Contrary to the plaintiff's assertions, the fact that the contract was entered into by Performance Anethesia, P.A. and not the individual defendants is immaterial. The Gonzalez Act does not require that a personal services contract be made directly with the individual health care provider in order for the exclusive remedy to lie under the FTCA. Rather, the Gonzalez Act states only that a health care provider must be "serving under" a Personal Services Contract in order to be covered. 10 U.S.C. § 1089(a). Furthermore, 32 C.F.R.§ 107.5(a) clearly contemplates the ability of the U.S. Secretary of Defense to contract with an entity for the personal services of its individual employees, while treating those individuals as employees of the government for purposes of the FTCA. This section provides that "[e]ach contract under 10 U.S.C. § 1091 <u>with an individual or with an entity, such as a professional corporation or partnership, for the personal services of an individual</u> must contain language specifically acknowledging the individual as a personal services contractor . . . ." 32 C.F.R. § 107.5(a) (emphasis added).

As a result, the individual defendants are immunized by the Gonzalez Act, and they are not proper defendants in this action. Any claims against them are, as a matter of law, claims against the United States. Thus, the substitution of the United States for the individual defendants was proper, and a suit against the government under the FTCA is the plaintiff's exclusive remedy.

---

[7]Several other provisions of the contract support this conclusion. For example, clause 1.1.9.6 demonstrates the underlying assumption that the employees serving under the contract are generally considered to be employees of the government. (Pl.'s Mem. Opp'n, Mot. Dismiss, Ex. 1 at 1-26, clause 1.1.9.6 ("Contract employees shall not be an employee of the United States Government if the employment would create a conflict of interest.")). The contract also contains a "Litigation" section that includes a provision whereby the CRNA "authorize[s] Government representatives to settle or defend the [malpractice] claims and to represent the health care provider in, or take charge of, any litigation involved in suchan [sic] action." (<u>Id.</u> at clause 1.1.7.)

Despite the clear language of the Gonzalez Act, the plaintiff argues that a general, common law "control test" should be used to determine whether the individual defendants were employees of the government or independent contractors. (See Pl.'s Memo in Supp. Mot. Review Scope at 5.) The court does not find it necessary to consider this argument given the language of the Gonzalez Act, but, in any event, even if the control test were applied, the result would be the same. The Fourth Circuit's control test includes an analysis of the contractual relationship between the government and the allegedly negligent health care provider. See Robb v. United States, 80 F.3d 884, 891 (4th Cir. 1996); Wood v. Standard Prods. Co., 671 F.2d. 825, 829 (4th Cir. 1982) ("[T]he contract and its terms fixing the relationship of the offending party are critical.").

Here, the terms of the contract clearly indicate that the government intended to retain "day-to-day control over the performance of the work under the contract." Berkman v. United States, 957 F.2d 108, 113 (4th Cir. 1992). As previously noted, the contract specifically provides:

> Performance under personal services <u>is subject to the day-to-day supervision and direction of designated employees of the Government</u>. The government will evaluate the quality of professional and administrative services provided, and <u>retain control</u> over the medical and professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment).

Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 1 at 1-24, clause 1.1.1. (emphases added).

Consistent with the unambiguous plain language of the contract into which Performance Anesthesia, P.A. and the government entered, the Court concludes that the parties intended to establish an employer-employee relationship, not an independent contractor relationship. Cf. Tsosie v. United States, 452 F.3d 1161, 1164 (10th Cir. 2006) (doctor found to be an independent contractor for FTCA purposes where the contract expressly stated that it was a "nonpersonal services contract" and where the contract also expressly stated that the doctor's professional services were rendered

11

in his capacity "as an independent contractor"); Creel v. United States, 598 F.3d 210, 212-14 (5th Cir. 2010) (same).

C. Feres Doctrine

Because the substitution of the United States for the individual defendants was proper, the plaintiff can proceed only against the United States in this action. As a result, the next question that must be answered is whether plaintiff's action against the United States is barred by the Feres doctrine. In Feres v. United States, 340 U.S. 135, 146 (1950), the Supreme Court held "that the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." In United States v. Johnson, 481 U.S. 681, 687-88 (1987), the Supreme Court reaffirmed its holding in Feres that "the Feres doctrine has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." This doctrine "provides a blanket of immunity to protect the government against allegations of negligence in military contexts." Estate of McAllister v. United States, 942 F.2d 1473, 1479 (9th Cir. 1991).[8]

In Appelhans v. United States, 877 F.2d 309, 310 (4th Cir. 1989), the court found that, "as a general rule, injuries sustained as a result of medical treatment at military facilities are 'incident to service.'" In circumstances involving alleged medical malpractice, the courts have routinely found any lawsuit to be barred by Feres. See, e.g., Kendrick v. United States, 877 F.2d 1201, 1203 (4th Cir. 1989) ("It is well established that receipt of medical care in military facilities by members

---

[8] Three rationales have been offered by the courts to explain the necessity of barring tort actions by soldiers. "First, the 'distinctively federal' relationship between the government and its soldiers would be undermined by holding military personnel accountable under the variations in state tort law according to the situs of the alleged tort ." Appelhans v. United States, 877 F.2d 309, 311 (4th Cir. 1989) (citations omitted). Second, because there is a comprehensive system of statutory benefits that is granted to services members, Congress must have intended these benefits to be the sole remedy for service related injuries. The third rationale involves the fear that frequent judicial inquiry into military decision making would have a deleterious impact on military discipline and effectiveness. Id.

12

of the military on active duty is 'activity incident to service . . . .'"); Rayner v. United States, 760 F.2d 1217 (11th Cir. 1985) ("[S]uits by servicemen or their representatives for medical malpractice are barred by the Feres doctrine."). Furthermore, "Feres bars suits for medical malpractice even when the treatment was not for military-related injuries." Jackson v. United States, 110 F.3d 1484, 1489 (9th Cir.1997). See also Atkinson v. United States, 825 F.2d 202 (9th Cir. 1987) (treatment of pregnancy).

In this case, it is clear that the decedent's injuries arose from activity incident to service. The decedent was an active duty Army soldier at all times relevant to the incidents alleged by plaintiff in the complaint. (Pl.'s Mem. Opp'n Mot. Dismiss at 3.) She was entitled to treatment at Womack Army Medical Center because of her status as an active duty member of the military. The injuries are alleged to have resulted from the negligence of medical staff who were serving under a personal services contract pursuant to the Gonzalez Act.[9] Thus, any injuries that the decedent sustained as a result of such medical care were service-related injuries, and any claims that decedent had a result are barred by the Feres doctrine.

In addition, the wrongful death medical negligence claim asserted by plaintiff, the decedent's husband, is similarly barred by the Feres doctrine. "The limits imposed by Feres are equally applicable where the claims of a family member are derivative to the service member's cause of action under the applicable state law." Kendrick, 877 F.2d at 1207. "'It is well established that Feres bars recovery by family members where the cause of action is ancillary or

---

[9] Plaintiff makes an extensive argument urging this court not to apply "derivative Feres immunity." (Pl.'s Mem. Opp'n Mot. Dismiss at 10-16.) The authority cited by plaintiff involves cases where an independent contractor claimed that it was entitled to immunity under Feres. However, plaintiff misunderstands the nature of this case. Here, the United States asserts Feres immunity only after having substituted itself in place of the individual defendants pursuant to the terms of the Gonzalez Act. As a result, derivative Feres immunity is not applicable here.

13

derivative to the serviceman's action for his own injury received incident to military service.'" Id. (quoting Lombard v. United States, 690 F.2d 215, 223 (D.C. Cir. 1982)). Thus, because the decedent's claim is barred by Feres, the plaintiff's claim is also barred.

The plaintiff is left without a remedy in this case, but this result cannot alter the court's conclusions. "Individual immunity [from tort suits under the FTCA] subsists even if government liability is otherwise foreclosed." Diaz-Romero v. Ashcroft, 472 F. Supp.2d, 156, 162 (D.P.R. 2007), aff'd sub nom., Diaz-Romero v. Mukasey, 514 F. 3d 115 (1st Cir. 2008). "In other words, the FTCA provides the 'exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability.'" Id. (quoting United States v. Smith, 499 U.S. 160, 166 (1990)).

## III. CONCLUSION

In sum, the substitution of the United States for the individual defendants was proper because the individual defendants are employees of the government as a matter of law under the Gonzalez Act. Furthermore, plaintiff's action against the United States is barred because the decedent received medical care at a military hospital based on her active military status, thereby making her injury "incident to service" within the meaning of the Feres doctrine. Therefore, defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED. Plaintiff's motion for review of the United States' scope of employment certifications is DENIED. In light of the foregoing rulings, defendant's motion to stay discovery is moot and is therefore DENIED. Because Performance Anesthesia, P.A. remains as a party defendant, this case is REMANDED to the General Court of Justice, Superior Court Division, Cumberland County, North Carolina. The Clerk is directed to send a copy of this order to the Clerk of that court.

14

This 27 August 2010.

                                              W. Earl Britt
                                              Senior U.S. District Judge